# THE ROCKAWAY.

## SLOCOMB *v.* THE ROCKAWAY.

*(Circuit Court, S. D. New York. November 12, 1885.)*

1. COLLISION—EAST RIVER—FERRY-BOAT AND BARGE AT ANCHOR—SUDDEN SNOW-SQUALL—STEAM.

   A ferry-boat that had knowledge of the position of a brig at anchor *held* liable for an injury caused by a collision with the brig, notwithstanding the fact that after she left her slip on the trip during which the collision took place a snow-squall occurred, which rendered objects and lights upon the river indistinguishable at any appreciable distance, and that while she was pursuing her way she was obliged to reverse her engine to allow another ferry-boat to cross her bow, and while backing sagged with the wind and tide afoul the brig, which was not discerned until it was too late to prevent collision; following *The Gregory*, 6 Blatchf. 528.

2. SAME—DUTY OF VESSEL AT ANCHOR TO RING BELL.

   In such a case, where there is no usage or statutory rule requiring the ringing of a bell or equivalent fog signal by a vessel at anchor, if reasonable care required her to give such signals, a failure to give such signal will entitle the vessel at fault to an apportionment of damages.

3. SAME—APPEAL—QUESTION OF FACT—CONFLICTING EVIDENCE.

   Where the case is one in which the evidence presents a difficult and nicely-balanced question of fact, depending on the credibility of the witnesses, the circuit court will not interfere with the decision of the district court, when the witnesses were examined in person before the court.

Appeal from District Court. See 19 Fed. Rep. 449.

*Henry T. Wing,* for appellees.

*Wm. G. Choate,* for appellant.

WALLACE, J. It is not controverted upon this appeal that when the Survivor was run into by the Rockaway the brig was lying at anchor on the usual anchorage ground for vessels in the East river off Nineteenth street, in the city of New York, with her anchor-light properly set and burning. As the pilot of the ferry-boat had been making trips every few minutes for several hours prior to the collision, passing the brig on each trip, he had notice of her location. It cannot be doubted that under such circumstances it was incumbent upon the steam-boat to exonerate herself from fault by satisfactory proof of exculpating circumstances,—some extraordinary or unusual occurrence which nautical men could not anticipate or prevent by the exercise of all reasonable precaution. *The Granite State,* 3 Wall. 310; *The Batavier,* 2 Rob. Adm. 407. The excuse offered is that just after the ferry-boat left her slip on the trip during which the collision took place a snow-squall occurred, which rendered objects and lights upon the river indistinguishable at any appreciable distance, and that while pursuing her way cautiously she was obliged to reverse her engine to allow the ferry-boat Martha to cross her bow, and while backing sagged with the wind and tide afoul the brig, the brig not being discernible until too late to prevent collision. Within the authority of *The Gregory,* 6 Blatchf. 528, this excuse, if proved, does not exoner-

ate the ferry-boat. If the weather became so thick by reason of a sudden and blinding snow-squall that she could not proceed without peril to vessels properly anchored in or near the track of her usual trip, taking into consideration the contingencies ordinarily to be encountered in crossing a river dividing commercial ports, it was her duty to stop, or return temporarily to her slip. CLIFFORD, J., said, speaking of such a case, that such an excuse will afford no justification for a collision. *The Adams,* 1 Cliff. 404. She had no right to take any chances when the property of others might be endangered by doing so. The defense of inevitable accident cannot prevail when, under the circumstances of the case, there is a reasonable probability that a collision may occur. *The Europa,* 2 Eng. Law & Eq. 557, 561.

It is urged for the appellant that in view of the state of the weather it was the duty of the brig to apprise other vessels of her whereabouts by fog signals. If by the custom of the port or by statutory regulation that duty was incumbent on the brig, or in the absence of these if reasonable care required her to give such signals, then, even if the ferry-boat could not insist upon her right to rely on the observance of such cautionary measures, she could at least insist that failure was a fault which should lead to an apportionment of the loss. Concededly there was no usage, nor at the time in question any statutory rule, requiring the ringing of a bell or equivalent fog signals by a vessel at anchor. The proofs as to the state of the weather and the duration and density of the snow-squall are conflicting. The witnesses were examined in the presence of the district judge, and he came to the conclusion that the weather was not so thick for any appreciable length of time as to require fog signals to be given by the brig.

There are discrepancies or improbabilities in the testimony of the six witnesses produced for the ferry-boat which justified the district judge in assuming that they intentionally or unintentionally exaggerated the facts, and in treating their positive testimony and their favorable opportunity for accurate observation as less convincing than the opposing testimony.

A careful reading of the proofs shows the case to be one in which the evidence presents a difficult and nicely-balanced question of fact depending altogether upon the credibility of the witnesses; and this court should not interfere with the decision of the judge who has observed the witnesses in person, and had an opportunity to test their intelligence and candor. *The Sampson,* 4 Blatchf. 28; *The Florida,* Id. 470; *The Heroine,* 6 Blatchf. 188.

The decree of the district court is affirmed, with costs.